UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JUSTIN SHANE RILEY                                                      PLAINTIFF

v.                                              CIVIL ACTION NO. 4:24-CV-00113-JHM

UNITED STATES MARSHALLS, *et al*.                                      DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motion for summary judgment filed by Defendants Detective Troy Couch, Detective Chad Gilbert, Officer Colton Baker, and Officer Timothy Kendall.  (DN 26). Proceeding *pro se*, Plaintiff Justin Shane Riley filed a response to the motion (DN 30), and Defendants filed a reply.  (DN 32).  Thereafter, Plaintiff filed a supplemental response which the Court will construe as a sur-reply.  (DN 39).  For the reasons that follow, the motion for summary judgment will be granted.

**I.**

Plaintiff is a pretrial detainee at the Daviess County Detention Center ("DCDC").  Plaintiff initially filed a complaint bringing a 42 U.S.C. § 1983/*Bivens* action against the "United States Marshalls," "Owensboro Mercy Health," and the Owensboro Police Department ("OPD").[1]  (DN 1).  However, after review of the complaint pursuant to 28 U.S.C. § 1915A, this Court dismissed the complaint without prejudice and directed Plaintiff to file an amended complaint against the individual OPD officers who allegedly used excessive force against him during his arrest. (DN 8).

Subsequently, Plaintiff filed an amended complaint.  (DN 10).  The amended complaint named the City of Owensboro, the OPD, and Detectives Couch and Gilbert as Defendants, along with "Officers 1&2 Identity Unknown."  (*Id.*).  Upon review of the amended complaint pursuant

---

[1] The Court construed the "United States Marshalls" as the United States Marshals Service and "Owensboro Mercy Health" as Owensboro Health, respectively. (DN 8).

to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Fourth Amendment excessive force claims and Fourteenth Amendment deliberate indifference to Plaintiff's health and safety claims to proceed against Detectives Couch and Gilbert and dismissed any claims against the City of Owensboro and the OPD for failure to state a claim upon which relief can be granted.  (DN 11). The Court further ordered that Plaintiff take steps necessary to name the unidentified officers as Defendants. (*Id.*). Subsequently, Plaintiff filed his second amended complaint which named Officers Baker and Kendall as Defendants.  (DN 21).

## II.

### A.  Factual Allegations

In full, the amended complaint and second amendment complaint provided:

1.) On August 13, 2024 Owensboro Police Dept. Officers Detective Chad Gilbert, Detective Troy Couch, [Officer Colton Baker, and Officer Timothy Kendall] violated my 4th amendment right to be free of excessive force when They left me in the back of a patrol car in my driveway in Hot temperatures until I overheated and went unconscious.  At which point I had to be transported to the Hospital by ambulance.

2.) On August 13, 2024, Owensboro Police Dept. Officers Det. Chad Gilbert, Det. Troy Couch, [Officer Colton Baker, and Officer Timothy Kendall] violated my 4th amendment right [to be free from] excessive force when during my arrest and transporting to Hospital and Daviess County Detention Center my left foot was broken while I was unconscious and in handcuffs.

3.) On August 13, 2024, Owensboro Police Dept Officers Det. Chad Gilbert, Det. Troy Couch, [Officer Colton Baker, and Officer Timothy Kendall] violated my 4th amendment right to be free of excessive force when upon release from the Hospital the Officers forced me to walk on my foot after I told them it was broken.  The officers then made me walk on it anyways into booking room.[2]

(DN 10, PageID #: 43–44).

---

[2] The Court construes paragraphs (1) and (2) as Fourth Amendment excessive force claims and paragraph (3) as a Fourteenth Amendment claim for deliberate indifference to Plaintiff's health and safety and to Plaintiff's serious medical needs.

**B. Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants maintain that on the morning of August 13, 2024, Detectives Couch and Gilbert were assigned to assist the Ohio County Sheriff's Department in executing two sealed federal warrants for the arrests of Plaintiff and another party. (DN 26-1, PageID #: 127). Once at Plaintiff's house, Detectives Couch and Gilbert, alongside Ohio County Sheriff's deputies, worked together to execute the arrest warrants. (*Id.*). After announcing their presence, the people inside of the house came outside and were cuffed, searched, and placed on the porch of Plaintiff's house. (*Id.*). While sitting on the porch, Plaintiff asked if the OPD Officers could go into his bedroom closet to get him a shirt and his flip-flops. (*Id.*, PageID #: 128). While searching for Plaintiff's shirt and flip-flops, the officers found what appeared to be a marijuana-grow operation inside of Plaintiff's closet. (*Id.*). After this discovery, the OPD Officers contacted the Ohio County Attorney's Office to seek a search warrant for the house, and the decision was made to separate the detainees so that they could not converse with each other in advance of any subsequent questioning. (*Id.*). Accordingly, Detective Couch escorted Plaintiff to Detective Gilbert's cruiser, where Plaintiff sat in the backseat. (*Id.*). Detective Gilbert turned on the cruiser's air conditioning and Plaintiff was offered a bottle of water, which was declined. (*Id.*).

Detectives Gilbert and Couch continued to check on Plaintiff while everyone waited for the search warrant to come through. (*Id.*). Subsequently, Detective Gilbert noticed that the Plaintiff was "acting groggy and out of sorts." (*Id.*, PageID #: 129). Plaintiff stated that he was having chest pains; accordingly, Detective Gilbert requested one of the Sheriff's deputies to call for an ambulance. (*Id.*). While waiting for the ambulance to arrive, Detective Gilbert asked the Plaintiff about his inhaler and whether he was diabetic; however, Plaintiff did not respond. (*Id.*). Once the ambulance arrived, Plaintiff was moved from the backseat of the cruiser onto a gurney

3

and wheeled to the ambulance. (*Id.*). Detective Couch sat with Plaintiff in the back of the ambulance while Detective Gilbert transported another detainee to the station for processing.[3]

At the hospital, Plaintiff was examined by medical providers and was eventually discharged. (*Id.*). Officers Baker and Kendall were dispatched to the hospital with Officer Baker instructed to transport Plaintiff to the DCDC for processing and Officer Kendall instructed to drive Detective Couch back to the DCDC. (*Id.*). Upon discharge, Plaintiff was wheeled to Officer Baker's cruiser and placed in the backseat and transported to the DCDC. (*Id.*). Once at the DCDC, Officer Baker transported Plaintiff via wheelchair for processing; however, upon being examined by the DCDC's nurse, Plaintiff was denied admission to the DCDC based on an elevated blood pressure reading and lethargy causing Plaintiff to be unable to stand. (*Id.*, PageID #: 130). Accordingly, Officer Baker returned Plaintiff to the hospital having radioed ahead to request a wheelchair. (*Id.*).

Around an hour after being readmitted to the hospital, Plaintiff was discharged for a second time; however, Plaintiff was resistant to getting out of bed. (*Id.*). Accordingly, Office Baker pulled Plaintiff up by the arm and placed him into a wheelchair, after which Plaintiff was wheeled out to Officer Baker's cruiser where he was assisted into the backseat by nurses. (*Id.*). Officer Baker transported Plaintiff back to the DCDC for the second time and used a wheelchair to transport Plaintiff from the cruiser to the booking room. (*Id.*). At this point, Plaintiff was deemed medically acceptable for admission into the DCDC. (*Id.*, PageID #: 131).

Defendants argue generally that Plaintiff's Fourth Amendment excessive force claims cannot stand against Officers Baker and Kendall because Plaintiff claims his foot injury was sustained while he was unconscious. (*Id.*, PageID # 133; DN 10, PageID # 43). Notably, Officers

---

[3] There does not appear to be body-worn camera ("BWC") footage of the ambulance ride to the hospital.

Baker and Kendall were not present during Plaintiff's arrest and were only around Plaintiff while he was conscious. (*Id.*). Accordingly, Defendants maintain that it does not follow that Officers Baker and Kendall could have caused Plaintiff's foot injury or contributed to Plaintiff's treatment with regard to his placement in a squad car allegedly causing overheating and loss of consciousness. (*Id.*).

With regard to Plaintiff's excessive force claims against Detectives Couch and Gilbert, the Defendants argue that Plaintiff's excessive force claims cannot stand as the BWC footage of the incident demonstrates that Detectives Couch and Gilbert acted in a "professional and courteous" manner when carrying out their duties. (*Id.*). Regarding Plaintiff's claims of excessive force concerning Plaintiff's overheating while being placed in a squad car, Defendants argue that:

(i)     Subsequent to being placed in a cruiser after being detained, Detective Gilbert turned on the cruiser's air conditioning and offered Plaintiff water and continued checking on Plaintiff;

(ii)    Once Plaintiff started to complain about health issues, Detective Gilbert immediately requested an ambulance and asked Plaintiff about his inhaler and whether he was a diabetic;

(iii)   Plaintiff stated that he was cold leading to Detective Gilbert turning the air conditioning down;

(iv)    The only mention of Plaintiff's foot being injured was his utterance of "Oh, my toe," when he sat in the cruiser;

(v)     The claimed injury is a broken foot, but the only evidence Plaintiff has produced provides that a "non-displaced ring-toe fracture has fully healed."

(*Id.*, PageID # 133–35).

In short, Defendants argue that their behavior was professional and courteous and therefore, objectively reasonable under the applicable legal standard.

With regard to Plaintiff's Fourteenth Amendment claim of deliberate indifference toward Plaintiff's health and/or serious medical needs, Defendants argue that Plaintiff was never in the

sole custody of Officer Kendall, as his only role in the events of the day were to pick up Detective Couch from the hospital and the only time Plaintiff was in the presence of Officer Kendall was during Plaintiff's first discharge from the hospital. (*Id.*, Page ID # 136). As Plaintiff was never in Officer Kendall's custody, it is a legal impossibility for a Fourteenth Amendment deliberate indifference claim to attach to Officer Kendall. (*Id.*).

Regarding Officer Baker, Defendants argue that Plaintiff was provided with a wheelchair at all points of contact between Officer Baker and Plaintiff. (*Id.*). Further, Defendants argue that Plaintiff cannot satisfy the objective prong of the Fourteenth Amendment's deliberate indifference test, as Plaintiff failed to show that he was suffering from an objectively serious medical need. (*Id.*). Defendants contend that this argument is buttressed by the fact that Plaintiff was discharged from the hospital twice in a two-hour period. (*Id.*). Further, regarding the subjective prong of the test, Defendants maintain that there is no evidence that Officer Baker recklessly disregarded Plaintiff's health and safety. (*Id.*). Instead, Defendants point toward Officer Baker's actions in ensuring Plaintiff had access to a wheelchair and Officer Baker's reliance on the judgment of medical professionals as evidence supporting a conclusion that Officer Baker's actions were subjectively reasonable. (*Id.*, Page ID # 137).

Regarding Detectives Couch and Gilbert, Defendants argue that Plaintiff has pled that his Fourteenth Amendment deliberate indifference claim took place while being forced to walk on his foot after leaving the hospital at which time both Detectives Couch and Gilbert no longer had contact with Plaintiff. (*Id.*, PageID # 137–38). Thus, Defendants argue that both Detectives Couch and Gilbert could not possibly be liable. Notably, Plaintiff concedes this in his Response. (DN 30, PageID #: 176).

Lastly, Defendants assert a blanket defense of qualified immunity based on the assertion that as of August 2024, there is no such caselaw establishing that Defendants' alleged conduct was clearly established as unlawful. (DN 26-1, PageID #: 138). Plaintiff does not dispute this. (DN 30, PageID #: 176).

### C. Plaintiff's Response

In his response, Plaintiff argues that pursuant to Federal Rules of Civil Procedure 56(d)(1) and (2) the Court should either deny the Defendants' motion for summary judgment and/or extend time for discovery. (DN 30, PageID #: 172). Plaintiff asserts that he has not been able to receive "missing medical records from [Owensboro Health Regional Hospital]" and that he has not received BWC footage of his first trip to DCDC from the hospital. (*Id.*).[4]

Plaintiff also disputes facts asserted in Defendants' motion for summary judgment, specifically that:

(i)     Plaintiff does not recall saying he was having chest pains;

(ii)    Plaintiff attempted to motion with his hands that he was hot and needed his inhaler;

(iii)   Plaintiff could not speak because he was too hot and was starting to lose breath and go unconscious;

(iv)    There is no BWC footage showing Plaintiff stating he was having chest pains or showing a Defendant asking about Plaintiff's inhaler;

(v)     Plaintiff does not recall stating that he was cold; and avers that he was "going unconscious and really confused and disoriented[;]"

(vi)    Plaintiff was too disoriented to speak at the original intake at DCDC; and

---

[4] On April 23, 2026, Plaintiff filed a motion for discovery seeking the BWC footage of Plaintiff's ambulance ride to the hospital, the name of the Officer who rode in the ambulance, and any other footage of Plaintiff while being transported to the hospital. (DN 40). Defendants filed a response noting that the discovery deadline had passed and that the answers to Plaintiff's questions were found in Defendants motion for summary judgment. (DN 41). The Court ultimately denied Plaintiff's motion for discovery. (DN 42). Further, Plaintiff's sur-reply seems to attach the Plaintiff's medical records from OHRH. Accordingly, Plaintiff's Fed. R. Civ. P. 56(d)(1) and (2) arguments are moot.

(vii)   Plaintiff was resistant at the second discharge because of the "unprofessional treatment by Officer Baker and OHRH staff[.]"  Plaintiff provides that he kept attempting to tell Defendants about his foot.

(*Id.*, PageID 173-74).

Further, Plaintiff argues that there is an absence of evidence on both sides and that Defendants did not provide all of the BWC footage.  (*Id.*).  Plaintiff also alleges specific factual disputes regarding the Fourth Amendment excessive force claims including:

(i)     Plaintiff did not decline a bottle of water or complain of chest pains;

(ii)    Plaintiff does not recall being asked about his inhaler;

(iii)   Plaintiff's foot was not injured by himself and the BWC of the arrest shows Plaintiff walking to the Officers without issue;

(iv)    Plaintiff can provide x-rays from a previous motorcycle accident which will allegedly show that his foot was not broken at the time of the arrest;

(v)     Plaintiff has submitted a request to OHRH to obtain his  medical records;

(vi)    Plaintiff contends that Officer Kendall was present during the entire first trip to the jail from the hospital riding in the passenger seat of the cruiser;

(vii)   Officer Baker was generally rude to Plaintiff and the allegedly missing BWC footage from the first transportation to the hospital would show his foot being broken; and

(viii)  Medical Staff at DCDC allegedly ordered the X-rays that show Plaintiff's broken foot, which happened subsequently to his initial booking.

(*Id.*, PageID #: 174-76).

### D.  Defendants' Reply

Defendants generally disagree with Plaintiff's assertion that Fed. R. Civ. P. 56(d)(1) and (2) are appropriate avenues to deny Defendants' motion for summary judgment and/or delay ruling on it.  (DN 32, PageID #: 183).  Defendants argue that Plaintiff's request for his missing medical records is not appropriate grounds for relief because Defendants do not have control over

8

Plaintiff's personal medical records. (*Id.*, PageID #: 184). Further, Defendants maintain that there is no "missing" BWC footage that has been withheld by Defendants; rather Officer Baker's BWC was not in "evidence" mode during the ambulance ride to the hospital. (*Id.*, PageID # 184-85).

Further, Defendants dispute facts denied by Plaintiff by citing to portions of the record thusly:

| Plaintiff's Denial | BWC Footage Record |
|---|---|
| Plaintiff denies stating that he was having chest pains. | BWC-2, 8:34:45 – 8:35:00 |
| Plaintiff denies being asked about his inhaler. | BWC-2, 8:28:25 – 8:28:55; BWC-2, 8:32:30 – 8:32:50 |
| Plaintiff denies stating that he was cold. | BWC-2, 8:29:09 – 8:29:55 |
| Plaintiff denies declining a bottle of water. | BWC-1, 6:56:20 – 6:56:35 |
| Plaintiff denies being asked if he was a diabetic. | BWC-2, 8:35:25 – 8:35:35 |

(*Id.*, PageID #: 187; DN 27).

Defendants also point out that Plaintiff describes his state as "disoriented and confused"; accordingly, Plaintiff is not a reliable source to ascertain what occurred during his arrest and subsequent transportation. (*Id.*, *citing* DN 30, PageID #: 175). Further, Defendants maintain that Plaintiff is mistaken that Officer Kendall rode with Officer Baker while Plaintiff was being transported to the DCDC. (*Id.*, PageID #: 188). In support of this assertion, Defendants point to Officer Kendall's affidavit stating as such (DN 26-6, PageID #: 151) and the fact that the CAD/Incident Report shows that Officers Baker and Kendall departed from the hospital at different times. (*Id.*). Lastly, Defendants generally maintain that Plaintiff has not provided sufficient evidence for either his Fourth Amendment or Fourteenth Amendment claims. (*Id.*, PageID 189-190).

## E.  Plaintiff's Sur-Reply

On April 23, 2026, Plaintiff filed his sur-reply.  (DN 39).  Therein, Plaintiff provides his medical records from Owensboro Health.  (*Id.*, PageID #: 214-296).  Further, Plaintiff contends that these records demonstrate that:

(i)     Plaintiff was in good health until he was left in the back of the cruiser for an extended amount of time in the heat;

(ii)    Plaintiff "had to be in a wheelchair and couldn't walk on my own at any point while in the hospital";

(iii)   Plaintiff was generally unresponsive and confused;

(iv)   Plaintiff's blood pressure was high;

(v)    Plaintiff's foot was already broken when booked into the DCDC and BWC footage shows that Plaintiff was walking fine prior to his arrest; and

(vi)   Plaintiff could not have broken his own toe; thus, it must have happened during Plaintiff's arrest.

(*Id*, PageID #: 211-12).

## III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

IV.

### A.  Fourth Amendment Excessive Force

Fourth Amendment excessive force claims are analyzed under an objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene. *Graham v. Connor,* 490 U.S. 386, 395-96, (1989).  An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396.  "The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (citing *Fox v. Desoto*, F.3d 227, 236-37 (6th Cir. 2007)).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396.  The question of whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances. *Id*. 397.

### 1.  *Officers Baker and Kendall*

Viewing the evidence in the light most favorable to Plaintiff, the record reveals a lack of evidence to support any allegation that Officers Kendall and Baker used excessive force in violation of Plaintiff's Fourth Amendment rights.  For instance, Plaintiff's excessive force claims regarding being left in a hot squad car and his foot being broken while unconscious cannot stand against Officers Baker and Kendall as they were not present during his initial confinement in the cruiser and the BWC footage shows that they were never around Plaintiff while he was in a state of unconsciousness.  Plaintiff contends that Officer Kendall rode with him to the hospital; however, this claim is controverted by the CAD/Incident Details Report providing that Officer Baker (Unit 427) and Officer Kendall (Unit 408) arrived and departed from the hospital at different times. (DN 26-7).  Plaintiff offers no evidence to refute this.  Accordingly, Officers Baker and

12

Kendall are entitled to summary judgment regarding Plaintiff's Fourth Amendment excessive force claim.

### 2.  Detective Gilbert

Turning to Detectives Gilbert actions in placing Plaintiff in the squad car, they too are entitled to summary judgment.  It is possible for a Fourth Amendment excessive force claim to flow from placing an arrestee in a hot squad car for an extended period.  *See Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (holding that the post-arrest detention in a police vehicle with windows rolled up in hot weather for a long period of time constituted excessive force under the Fourth Amendment).  In *Burchett*, the court found that "[t]he officers had many equally effective ways of detaining Burchett that would not have subjected him to excessive heat. . . . [T]hey could have . . . utilized the car's cooling or ventilation devices."  *Id*.  That is the case here, as it is incontrovertible that Detective Gilbert turned on the air conditioning and offered  Plaintiff water.  Once Plaintiff began to complain about health issues, Detective Gilbert responded quickly to request an ambulance and once Plaintiff entered the ambulance, he was no longer in his custody.  Accordingly, Detective Gilbert could not have broken Plaintiff's foot during the ride to the hospital.  Plaintiff has provided no evidence to call into question the reasonableness of Detective Gilbert's actions. Consequently, Detective Gilbert is entitled to summary judgment regarding Plaintiff's excessive force claims.

### 3.  Detective Couch

Detective Couch rode in the back of the ambulance with Plaintiff on the way to the hospital. Notably, this is when Plaintiff claims his foot was broken.  (DN 10, PageID #: 43).  Further, there is no BWC footage of the first trip to the hospital.  (DN 26-1, PageID #: 134).  Detective Couch's affidavit admits that he rode with Plaintiff to the hospital and specifically avers that "[a]t no time

13

did Detective Gilbert or myself engage in activity that could have broken Riley's foot or toe, nor did we otherwise mistreat Riley." (DN 26-2, PageID #: 141).  The only evidence that Plaintiff has produced regarding his alleged injury is a medical note from October 14, 2024, providing that Plaintiff's non-displaced ring-toe fracture had fully healed. (DN 1, PageID: # 6-9).

Plaintiff has provided no evidence suggesting that Detective Couch, or any other officer present undertook any action to break Plaintiff's foot or toe.  Courts have held that "[t]o determine whether a genuine dispute of material fact exists, the court must pierce the pleadings and asses the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record."  *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016).  Further, "[a]t the summary judgment stage . . . naked allegations in the pleadings are insufficient to defeat summary judgment on [a] Section 1983 claim." *Graves v. Teague*, No. 38,  2025 U.S. Dist. LEXIS 64868, at *9-10 (W.D. Ky. Oct 2, 2024).

Plaintiff has failed to present specific facts to show that there is a genuine issue of fact for trial on this claim.  Plaintiff's sole allegation is that his foot was not injured by himself without any other supporting evidence that Detective Couch acted unreasonably.  Accordingly, Detective Couch is entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim.

**B.  Fourteenth Amendment Deliberate Indifference**

Pretrial detainees enjoy a "right to adequate medical care" under the Fourteenth Amendment.  *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (quoting *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)). A government official violates this right by acting with "deliberate indifference" to the detainee's "serious medical needs."  *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)).   Mirroring the Eighth Amendment, this deliberate indifference inquiry contains both an objective and subjective component.  *Id*.  Accordingly, a

14

plaintiff can make out a deliberate indifference claim under the Fourteenth Amendment by first alleging that the detainee's medical need was "sufficiently serious." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 834, (1994)) (detailing the objective component).  Second, under prior caselaw, the plaintiff had to show that the official "subjectively perceived facts from which to infer substantial risk to the [detainee], that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Parsons v. Caruso*, 491 F. App'x 597, 602 (6th Cir. 2012).  This presents a high bar, as "[i]t is not enough that an official 'fail[s] to alleviate a significant risk that he should have perceived but did not.'" *Parsons*, 491 F. App'x at 602 (quoting *Farmer*, 511 U.S. at 838).  In response to recent Supreme Court precedent, however, the Sixth Circuit has modified the subjective component of the deliberate indifference inquiry for pretrial detainees.  *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316-17 (6th Cir. 2023) (explaining the divergence in the Fourteenth and Eighth Amendment analysis articulated in *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021) in response to *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

After *Brawner*, the subjective element has been modified to "lower the subjective component from actual knowledge to recklessness." *Id*.  So, a plaintiff making out a deliberate indifference claim under the Fourteenth Amendment must now show: (1) that the detainee possessed a sufficiently serious medical need; and (2) that the officer "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 317 (quoting *Brawner*, 14 F.4th at 596) (alteration in original).  "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Grote v. Kenton Cnty., Ky.,* 85 F.4th 397, 405 (6th Cir. 2023) (internal quotation omitted).

Plaintiff's Fourteenth Amendment deliberate indifference to serious medical needs claims are based on the assertion that when Plaintiff was released from the hospital, he was forced to walk on his injured foot. (DN 10, PageID # 43). Plaintiff's sur-reply seems to contradict his assertion that he was forced to walk on his injured foot when leaving the hospital. Therein, Plaintiff provides: "I had to be in a wheelchair and couldn't walk on my own at any point while in the hospital both times. I never stood up and walked fine." (DN 39, PageID # 211). It does not follow that Plaintiff was forced to walk on an injured foot, but also "had to be in a wheelchair and couldn't walk."

Regardless, the record reflects that Officer Kendall, Detective Gilbert, and Detective Couch were not present when Plaintiff was allegedly forced to walk on his injured foot. Accordingly, liability for Plaintiff's deliberate indifference claims cannot attach, and they are entitled to summary judgment on this claim.

Officer Baker transported Plaintiff from the hospital to the DCDC after his first discharge and again after the second discharge. Officer Baker has averred that Plaintiff was provided with a wheelchair on each trip (DN 26-5), which seems to be corroborated by Plaintiff's sur-reply, and the CAD Report. (DN 26-7, Page ID #: 156).

Plaintiff has not provided evidence that either the objective or subjective prongs of the Fourteenth Amendment deliberate indifference test has been met. Regarding the objective prong, Plaintiff presents no evidence that his foot injury constituted an objectively serious medical need. Plaintiff was discharged from the hospital twice in short succession, and his initial failure to be admitted to the DCDC was due to Plaintiff's high blood pressure and lethargic behavior. (DN 26-

16

8, PageID #: 163).  While the Denial of Admission form notes that Plaintiff was unable to stand, there is no indication that this was due to his foot injury and not his elevated blood pressure causing lethargy. As Plaintiff was examined by medical professionals and they made no indication that immediate treatment was necessary, there is no evidence that the objective prong of the test has been met.

Lastly, there is no evidence in the record to support the conclusion that Officer Baker recklessly disregarded Plaintiff's health and safety. It appears that at all times of transportation, Plaintiff was provided with a wheelchair. (DN 26-5; DN 26-7). Accordingly, Officer Baker is entitled to summary judgment on Plaintiff's Fourteenth Amendment deliberate indifference claim, as well.

**V.**

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 26) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein.

Date: June 15, 2026

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:      Plaintiff, *pro se*
         Counsel of record
4414.016

17